# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

|  |  |
|---|---|
| LAJAVIER TIMBERSON and SHANTELLE TIMBERSON, *Plaintiffs*, v. BUTTS COUNTY GEORGIA, *et al.*, *Defendants*. | CIVIL ACTION NO. 5:21-cv-00291-TES |

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment [Doc. 15]. Rather than timely responding to Defendants' dispositive motion, Plaintiffs LaJavier Timberson and Shantelle Timberson took the unorthodox, but admittedly bold, option of simply filing a Motion for Hearing [Doc. 20], which the Court swiftly denied. [Doc. 21]. Then, one week later—and only after the Court denied their Motion for Hearing—Plaintiffs filed a Response [Doc. 22]. Plaintiffs' counsel didn't ask for an extension or even give a reason for the untimely filing. Accordingly, the Court is under no obligation to consider the brief. *See* Fed. R. Civ. P. 6(b)(1); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); *Destra v. Demings*, 725 F. App'x 855, 859 (11th Cir. 2018). Even if the Court opted to consider Plaintiffs' Response, it added nothing of merit. In their total of five pages, Plaintiffs offered nothing more than regurgitating some

standards with little application to the actual facts of this case. *See* [Doc. 22]. Indeed, Plaintiffs didn't even respond to Defendants' arguments regarding the vast majority of their numerous claims.

Ignoring the serious procedural and substantive nature of those flaws, the Court construes the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005). That being said, the facts laid out in Defendants' Statement of Material Facts [Doc. 15-2] must be deemed admitted. Pursuant to Local Rule 56, "the respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." L.R. 56, M.D. Ga. A respondent's failure to file a statement in this manner will result in the Court deeming as admitted "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record[.]" *Id.*

Plaintiffs, as the respondents, completely ignored the Local Rules when they filed a response that specifically failed to refute any of the 34 numbered facts contained in Defendants' Statement of Material Facts. As a result of Plaintiffs' noncompliance, the Court will once again enforce its rules and deem Defendants' Statement of Material facts admitted pursuant to Local Rule 56. *See, e.g., Bryant v. Norfolk S. R.R.*, No. 22-10452, 2022 WL 17420593, at *1 (11th Cir. Dec. 6, 2022).

However, Plaintiffs' failure to effectively respond in accordance with the Local Rules does not relieve the Court of its duty to consider the merits of Defendants' Motion for Summary Judgment. While the facts presented below derive from Defendants' Statement of Material Facts, the Court must nonetheless carefully review each record citation used in support of the pending Motion to ensure that no genuine issue of material fact actually exists. *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam)) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact."). Derived from Defendants' Statement of Material Facts, here are the facts.

## **BACKGROUND**

Plaintiffs LaJavier and Shantelle Timberson bring this suit arising from a law enforcement stop that occurred on July 11, 2019. *See* [Doc. 1]; [Doc. 15-2, ¶ 2]. Mr. Timberson was driving down Colwell Road, a county-maintained roadway where Butts County, Georgia doesn't allow tractor-trailer trucks. [Doc. 15-2, ¶ 3]. During this time, parts of Interstate 75 were under construction, causing drivers to detour using Colwell Road. [*Id.* at ¶ 5]. Notwithstanding this construction, tractor-trailer drivers still could not use Colwell Road. [*Id.* ¶¶ 3–4]. To enforce this and other roadway restrictions and

laws, Butts County Sheriff's deputies patrolled Colwell Road frequently. [*Id.* at ¶ 4]. On the night in question, Butts County Sheriff's Deputy Hunter Nunn spotted a tractor-trailer driving down Colwell Road and initiated a traffic stop. [*Id.* at ¶¶ 6–7]. Upon pulling behind the tractor-trailer and activating his emergency lights, Deputy Nunn realized that the tractor-trailer kept its speed and didn't pull over. [*Id.*]. Instead, the driver, Mr. Timberson, passed several places where he could have pulled over along the road. [*Id.* at ¶ 9].

Deputy Nunn then called for back-up from other deputies. [*Id.* at ¶ 10]. Other officers—Sergeant Michael Bivins, along with Deputies Benny Harris and Garrett Vick—shortly arrived in the area. [*Id.* at ¶ 11]. Sergeant Bivins instructed Deputy Nunn to overtake the tractor-trailer and attempt to "box him in." [*Id.* at ¶¶ 13–14]. Upon the tractor-trailer stopping, Sergeant Bivins and Deputy Nunn ordered Mr. Timberson to show his hands. [*Id.* at ¶ 16]. Mr. Timberson ignored this order. [*Id.* at ¶ 17]. Again, they ordered Mr. Timberson to open the door. [*Id.* at ¶ 18]. And again, he failed to follow that instruction, too. [*Id.*]. In response, Sergeant Bivins stepped toward the tractor-trailer and opened the door as Deputy Nunn provided back-up. [*Id.* at ¶ 19]. Once officers opened the door, they instructed Mr. Timberson to exit the vehicle. [*Id.* at ¶ 20]. He didn't do that, either. Instead, he asked, "what did I do?" [*Id.* at ¶ 21]. Because of his non-compliance, Deputy Nunn decided to step toward the vehicle and pull Mr. Timberson out to the ground. [*Id.* at ¶ 22]. When Deputy Nunn tried to pull him out,

Mr. Timberson grabbed the steering wheel and refused to move. [*Id.* at ¶ 23]. Deputy Vick then joined Deputy Nunn in trying to remove Mr. Timberson from the vehicle. [*Id.* at ¶ 24]. After finally removing Mr. Timberson from the vehicle, officers placed him on the ground so that they could handcuff him. [*Id.* at ¶ 25]. Mr. Timberson still wouldn't comply with the officers' instructions as they ordered him to place his arms behind his back. [*Id.* at ¶ 27–29]. In response, Deputy Vick deployed his taser to Mr. Timberson's back. [*Id.*]. Finally, officers were able to place handcuffs on Mr. Timberson, but around the same time, Deputy Vick deployed his taser to Mr. Timberson's calf.[1] [*Id.* at ¶ 30]. Sergeant Bivins immediately instructed Deputy Vick to stop. [*Id.* at 31].

Plaintiffs filed suit in the Superior Court of Butts County on July 12, 2021. [Doc. 1-1]. Plaintiffs brought claims against Butts County, Georgia, Butts County Sheriff's Office, Butts County Jail, Sheriff Gary Long,[2] Hunter Nunn, Michael Bivins,[3] John Doe 1, and John Doe 2.[4] Mr. Timberson brought claims under 42 U.S.C. § 1983, and state law claims of negligent hiring and retention, false imprisonment, *respondeat superior*, battery,

---

[1] Curiously, and critically, Plaintiffs chose not to sue Deputy Vick.

[2] Only in his individual capacity.

[3] It appears that Bivins is misspelled in Plaintiff's Complaint. The Court takes the spelling in this Order from Defendant Bivins' declaration. [Doc. 15-4, Bivins Decl., p. 1].

[4] The Scheduling and Discovery Order [Doc. 4] allowed parties 30 days from the filing of that Order to amend the pleadings or join parties. [Doc. 4, p. 3]. That deadline passed months ago. Additionally, fictious party practice is not allowed in federal court. *See New v. Sport & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Therefore, the Court **DISMISSES** Defendants John Doe 1 and John Doe 2.

intentional infliction of emotional distress, and claims under "Article 1 § 1 of the

Georgia State Constitution." [Doc. 1-1, p. 8–11]. Additionally, Mrs. Timberson brought a

loss of consortium claim. [Doc. 1-1, p. 9]. Defendants timely removed the action to this

Court under 28 U.S.C. §§ 1331 and 1443. [Doc. 1, p. 2]. On October 31, 2022, Defendants

filed the instant Motion for Summary Judgment.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*,

941 F.2d at 1437. The movant may cite to particular parts of materials in the record,

including, "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,' which it believes demonstrate the absence of a

genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[5] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by

---

[5] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

## DISCUSSION

### I.   Defendant Butts County Jail

Plaintiffs name Butts County Jail as a separate Defendant, but as Defendants correctly point out, Butts County Jail is not a separate legal entity and therefore cannot be sued. [Doc. 15–1, p. 7]. Georgia law—the law of the forum state—governs the analysis. *See* Fed. R. Civ. Pro. 17(b). Under Georgia law, county jails are not capable of being sued. *See Brannon v. Thomas Cnty. Jail*, 280 F. App'x 930, 934 n.1 (11th Cir. 2008); *see also Todd v. Lowndes Cnty. Jail*, No. 7:21-cv-122 (WLS-TQL), 2021 WL 5832997, at *1 (M.D. Ga. Dec. 8, 2021). Any claim lodged against Butts County Jail necessarily fails.

### II.   42 U.S.C. § 1983 Claims

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for relief under § 1983, a plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, he must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.*

a.    **Defendant Butts County, Georgia**

Defendants first argue that Defendant Butts County, Georgia cannot be liable for the actions of the sheriff and his deputies because the county is "powerless" to control the sheriff's department and therefore no causal connection can exist between the county's actions and the alleged injury. [Doc. 15-1, p. 7]. The Court agrees.

Counties can only be held liable for acts of which "the county is actually responsible." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). To create that liability, Mr. Timberson must show an "official policy" under which the county caused the constitutional violation. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). That policy can be enumerated in two ways: (1) an officially promulgated policy, or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the county. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Mr. Timberson fails to show either.

It is clear that Georgia law regards a sheriff's office as a separate entity, not one under a county's control. *See Manders v. Lee*, 338 F.3d 1304, 1310 (11th Cir. 2003). Indeed, Georgia law gives only the Georgia General Assembly—not counties—the power to control sheriffs. *See Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 396 S.E.2d 903 (Ga. 1990). As a corollary, sheriff's deputies are employees of the sheriff, not the county. *See Brown v. Jackson*, 470 S.E.2d 786 (Ga. Ct. App. 1996). Even more, a sheriff is not considered a policymaker for the county regarding the sheriff's law enforcement policies and

conduct. *See Grech v. Clayton Cnty.*, 335 F.3d 1326 (11th Cir. 2003). Therefore, Mr.

Timberson cannot create the necessary causal link between Defendant Butts County,

Georgia, and his alleged harm to sustain a § 1983 claim using *Monell* liability.

    **b.**  <u>**Excessive Force**</u>

  The use of excessive force in making an arrest violates the Fourth Amendment.

*Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir. 1998). The Supreme Court "has

long recognized that the right to make an arrest . . . necessarily carries with it the right

to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*,

490 U.S. 386, 396 (1989); *see also Terry v. Ohio*, 392 U.S. 1 (1968). Indeed, in evaluating the

use of force, a court's analysis must "embody allowance for the fact that police officers

are often forced to make split-second judgments—in circumstances that are tense,

uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation." *Graham*, 490 U.S. at 396–97.

  The Eleventh Circuit instructs "[t]he 'reasonableness' inquiry in an excessive

force case is an objective one: the question is whether the officer's actions are

'objectively reasonable' in light of the facts and circumstances confronting him, without

regard to his underlying intent or motivation." *Kesinger ex rel. Est. of Kesinger v.

Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). The analysis reviews the totality of the

circumstances, evaluating "(1) the need for the application of force, (2) the relationship

between the need and the amount of force used, and (3) the extent of the injury

inflicted." *Draper v. Reynolds*, 369 F.3d 1270, 1277–78 (11th Cir. 2004).

Here, the officers' use of force to remove Mr. Timberson from his vehicle, and the use of tasers to effectuate the arrest were both reasonably proportionate to the "difficult, tense, and uncertain situation" that the officers faced.[6] *Id.* Not only did Mr. Timberson refuse to stop after being pursued by officers, but he also failed to follow commands after eventually stopping. He didn't step out of the vehicle as directed, put his hands up, or get on the ground without the officers' intervention. [Doc. 15-3, Nunn Decl., ¶¶ 17–20]; [Doc. 15-1, ¶ 21]. Because Mr. Timberson wouldn't follow commands, "there was a reasonable need for some use of force in this arrest." *Draper*, 369 F.3d at 1278.

To be sure, "being struck by a taser gun is an unpleasant experience," but under the facts presented, it was "reasonably proportionate to the need for force and did not inflict any serious injury." *Id.* Indeed, moments after the arrest, the arrest video shows Mr. Timberson coherent and standing on his own power. [Doc. 15, Exhibit D, DashCam Video, at 14:14–36]. Therefore, under the totality of the circumstances, the officers' use of force was not excessive. Because the use of force was "objectively reasonable under the circumstances," Defendants "did not violate [Mr. Timberson's] constitutional right to be free from excessive force." *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009).

---

[6] Importantly, none of the named Defendants used a taser during the traffic stop and arrest—only Deputy Vick used his taser. However, Deputy Vick is not a defendant to the action. Therefore, the use of the taser has little-to-no bearing on the excessive-force analysis for the actual Defendants in this action.

### c. <u>Failure to Intervene</u>[7]

It is true that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable[.]" *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996). However, as a precursor to that liability, there needs to be excessive force in the first place. Put simply, if an officer doesn't observe a use of excessive force, then there can be no duty to intervene and stop it. *Id.* To be sure, if the law does not clearly establish that the acting officer used excessive force, then "the other officers had no duty to intervene." *Callwood v. Jones*, 727 F. App'x 552, 560 (11th Cir. 2018). Put another way, because there was "no excessive force, there can be no constitutional violation for failure to intervene." *Poole v. Bell*, No. 5:09-cv-233 (MTT), 2012 WL 1074291, at *12 (M.D. Ga. Mar. 29, 2012). Because the Court previously concluded that Mr. Timberson did not suffer any constitutional injury, the other officers on the scene necessarily are not liable for failing to intervene to stop a constitutional violation that never happened.

### d. <u>False Arrest</u>

As a preliminary matter, the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process. *Smart v. City of Miami*, 740 F.

---

[7] Even though Deputy Vick is not a defendant, his use of the taser is relevant to the failure-to-intervene claim. His use of the taser, though, does not change the Court's analysis. Deputy Vick's use of the taser in stun-gun mode was still objectively reasonable and proportionate in light of the totality of the circumstances.

App'x 952, 958 n.4 (11th Cir. 2018) (citing *Manuel v. City of Joliet*, 137 S.Ct. 911, 918-19 (2017)); *see also Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018) ("[A] warrantless arrest lacking probable cause violates the Constitution, and such an arrest can therefore potentially underpin a § 1983 claim. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)").

"An arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force." *Hough v. State*, 279 Ga. 711, 716, 620 S.E.2d 380, 385 (2005) (citing *Clements v. State*, 226 Ga. 66, 67(2), 172 S.E.2d 600, 601 (1970)). Accordingly, when Defendants restrained Mr. Timberson, Defendants effectuated an arrest.

Detaining someone on the basis of a false arrest creates a cognizable claim under § 1983. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). "An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest." *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). Therefore, if the officers had probable cause to arrest Mr. Timberson, his § 1983 claim alleging false arrest must fail.

"Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is

being committed." *Gates v. Khokar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)). It requires only "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 884 F.3d at 1298 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Thus, "innocent behavior frequently will provide the basis for a showing of probable cause." *Gates*, F.3d at 1298 (quoting *Illinois*, 462 U.S. at 243). Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Gates*, F.3d at 1298 (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

However, even if an officer arrested a citizen without actual probable cause, that police officer is nonetheless entitled to qualified immunity if he had only "arguable" probable cause to arrest that citizen. *Gates*, F.3d at 1298; *Lee*, 284 F.3d at 1195; *See also Redd v. City of Enterprise*, 140 F.3d 1378, 1383–84 (11th Cir. 1998) ("[A]rguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest."); *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("[T]he inquiry is . . . whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.").

Whether an officer has probable cause or arguable probable cause, or neither, "depends on the elements of the alleged crime and the operative fact pattern." *Brown*,

608 F.3d at 735; *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1139 (11th Cir. 2007) ("This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists.").

However, qualified immunity does not insulate an officer from liability where "it is clear that the conduct does not rise to the level of a crime, under the facts known at the time." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) ("To hold otherwise would eviscerate the concept of probable cause and would permit officers to arrest disagreeable individuals who may be exercising their constitutionally protected rights to free speech, albeit in a loud manner.").

Here, Defendants—namely, Deputy Nunn—had probable cause to initiate the stop. To begin, Mr. Timberson's driving on Colwell Road violated traffic regulations. *See generally Whren v. U.S.*, 517 U.S. 806 (1996) (discussing probable cause where officers believe a traffic violation occurred). But, that probable cause increased when Mr. Timberson ignored Deputy Nunn's lights and sirens and continued driving. While it is undisputed that Mr. Timberson did not lead officers on a high-speed chase, his actions nonetheless reflected a desire to evade officers. *See Tillis on behalf of Wuenschel v. Brown*, 12 F.4th 1291 (11th Cir. 2021). Therefore, probable cause existed to initiate the traffic stop and ultimately to arrest Mr. Timberson. *See Anthony v. Coffee Cnty.*, 579 F. App'x 760 (11th Cir. 2014) (discussing an uncooperative defendant whose actions gave officers

16

probable cause to make an arrest). Because officers had probable cause, Mr. Timberson

fails to bring a cognizable false arrest claim under § 1983. *See Marx*, 905 F.2d at 1505.

> ### d.   <u>Qualified Immunity</u>[8]

"Qualified immunity offers complete protection for individual public officials

performing discretionary functions 'insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)). Still, "when a defendant moves for summary

judgment based on the doctrine of qualified immunity, the court must view the facts in

the light most favorable to the plaintiff." *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir.

1992).

To claim qualified immunity, a defendant must first show he was performing a

discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014).

Discretionary functions include those "(1) undertaken pursuant to the performance of

[an officer's] duties and (2) within the scope of [the officer's] authority." *Lenz v. Wilburn*,

51 F.3d 1540, 1545 (11th Cir. 1995). In the Fourth Amendment context, the question is

not "whether [the officer] has the right to engage in *unconstitutional* search and seizures,

---

[8] To be clear, the Court finds that Defendants did not violate Mr. Timberson's constitutional rights at all. *See Burns v. Fugate*, No. 3:20-cv-4199-J-39MCR, 2020 WL 2198198, at *1 (M.D. Fla. May 6, 2020) ("In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action under § 1983."); *see also Outlaw v. Speight*, No. 5:11-cv-341-MTT-MSH, 2012 WL 3901745, at *4 (M.D. Ga. Aug. 15, 2012). Out of an abundance of caution, the Court conducts a qualified immunity analysis.

but whether engaging in searches and seizures *in general* is part of his job-related [duties]." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) (emphasis in original). More specifically, making an arrest is within the discretionary functions of a sheriff's deputy—even when an arrestee claims they faced excessive force. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Therefore, Defendants were acting within their discretionary authority when they arrested Mr. Timberson.

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). The "clearly established" requirement may be met by one of three showings: (1) a materially similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012).

Plaintiffs do not quibble with Defendants argument that they were acting within

their discretionary functions. However, Plaintiffs do attempt to show that Defendants'

actions violated clearly established law. Those arguments fail.

First, Mr. Timberson points to *Powell v. Haddock*, 366 F. App'x 29 (11th Cir. 2010),[9]

to support his proposition that his rights were clearly established. [Doc. 22, p. 5].

However, upon closer inspection of *Powell*, there are many significant differences. First,

the arrestee in *Powell* was simply standing on the side of the road, not driving a tractor-

trailer. *Powell v. Haddock*, 366 F. App'x 29, 30 (11th Cir. 2010). Indeed, the actions of the

*Powell* plaintiff did not "rise to the level of resisting an officer." *Id.* at 31. Further, the

arrest in *Powell* was conducted without probable cause. *Id.* All of these differences are

significant because in laying out clearly established law, Plaintiffs must show that a

"bright line [has been] crossed." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th

Cir. 1993). Comparisons to factually distinct cases—especially one like *Powell*—do not

carry that burden.

Mr. Timberson also points to *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir.

2011) as a supporting case. However, again, the facts are readily distinguishable. First,

in *Fils*, the plaintiff was not "resisting arrest or attempting to escape." *Fils v. City of

Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). Here, Mr. Timberson led officers on a

chase for several miles before coming to a stop. In *Fils*, the plaintiff did not disobey

---

[9] Importantly, unpublished opinions like *Powell* are "incapable of clearly establishing law for qualified-immunity purposes." *Trotter v. Shull*, 720 F. App'x 542, 544 (11th Cir. 2017).

orders or ignore any instructions. *Id.* Here, Mr. Timberson ignored several orders from several officers. [Doc. 15, Exhibit D, DashCam Video, at 13:00–17]. Additionally, as Defendants correctly point out, *Fils* revolves around the use of a taser. [Doc. 23, p. 3]. None of the named Defendants deployed a taser—only Deputy Vick did that. Once again, Vick is not a party to the action. Therefore, *Fils* has no bearing on this case.

Accordingly, *even if* Defendants had violated Mr. Timberson's constitutional rights, they are entitled to qualified immunity.

### e.   Entity and Supervisor Liability

Plaintiffs seem to bring claims against certain Defendants because of their status as supervisors. But, Defendants again correctly argue that Plaintiff's claims against them as supervisors warrant dismissal. To be liable as a supervisor, an individual must (1) personally participate in the unconstitutional conduct, or (2) have some causal connection between their acts and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). For that causal connection, it must be shown that (1) the supervisor was on notice, by history of widespread abuse, of the need to correct a practice and failed to do to, (2) a policy or custom resulted in deliberate indifference, (3) the supervisor directed a subordinate to act unconstitutionally, or (4) the supervisor knew of a subordinate's unlawful conduct and failed to stop it. *Id.* But these deprivations and violations must be "obvious, flagrant, rampant and of continued duration[.]" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

To the extent that Plaintiff asserts a failure-to-train claim, he again fails to lay out facts that tend to show that any Defendant exhibited the required deliberate indifference. Under a failure-to-train claim, a supervisor can be held liable "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 483 U.S. 378, 388 (1989). Therefore, to maintain such a claim, Mr. Timberson needed to show that Defendants had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate . . . rights." *Connick v. Thompson*, 563 U.S. 51 (2011). Plaintiffs fail to carry that burden.

Likewise, any claim against Defendants Long or Butts County Sheriff's Office fails because Plaintiff doesn't show a custom or practice that caused a constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 692 (rejecting *respondeat superior* liability under § 1983 and holding that an entity is liable only when the entity's "official policy causes a constitutional violation.").

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' § 1983 claims.

### III.   <u>Georgia Law Claims</u>

Initially, any claim based solely on the Georgia Constitution fails, as there is no equivalent to § 1983 under Georgia law. *See Howard v. Miller*, 473 S.E.2d 636 (Ga. Ct. App. 1996) ("We have no equivalent to 42 U.S.C. § 1983, which gives a claim against a

state officer individually for certain unconstitutional acts.").

### a.   **Official Immunity**

Under Georgia's doctrine of official immunity—the state-law version of qualified immunity—public officials generally cannot be held personally liable for discretionary acts[10] performed within the scope of their official authority. *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341, 344 (2001). However, public officials will not receive official immunity if "they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. Art. I, § 2, ¶ IX(d); *Murphy v. Bajjani*, 282 Ga. 197, 647 S.E.2d 54, 60 (2007). In the context of official immunity, actual malice means "a deliberate intention to do wrong" or "the intent to cause the harm suffered by the plaintiff[]." *Murphy*, 647 S.E.2d at 60. To show actual malice, a plaintiff must allege facts that evince more than "the reckless disregard for the rights or safety of others," *id.* at 60, and more than "deliberate indifference," *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1145 (N.D. Ga. 2016).

To be sure, "actual malice requires more than showing that the defendant police officer lacked probable cause." *Davis*, 706 F. App'x at 557. "Actual malice" in the official immunity context means "a deliberate intention to do wrong or the intent to cause the harm suffered by the plaintiffs." *Id.* (quoting *Murphy*, 647 S.E.2d at 60). The threshold

---

[10] Discretionary acts include those that call for "the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Teston v. Collins*, 459 S.E.2d 452, 454 (Ga. Ct. App. 1995).

for showing actual malice is high. For example, "the record may support an inference of actual malice where there is evidence indicating that the police officer arrested the plaintiff despite having clear proof that the plaintiff did not commit the crime for which he was arrested." *Id.*

To be clear, Plaintiffs did not respond to Defendants' state-law arguments *at all*. That is enough for the Court to consider the claims abandoned. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Foster v. Franklin Collection Serv., Inc.*, No. 5:17-CV-00008-TES, 2018 WL 4365518, at *5 (M.D. Ga. Sept. 13, 2018); *Gary v. City of Warner Robins, Ga.*, No. 5:16-CV-151 (TES), 2018 WL 3825220, at *6 (M.D. Ga. Aug. 10, 2018). However, even on the merits, Plaintiffs' state-law claims lack merit.

On these facts, it is clear that Defendants engaged in discretionary acts. *See Russell v. Barrett*, 673 S.E.2d 623, 627 (Ga. Ct. App. 2009) (collecting cases describing discretionary acts, including high-speed pursuits, firing weapons, etc.). Therefore, pursuing Mr. Timberson and the later decision to effectuate an arrest are discretionary functions. *See id.*; *Taylor v. Waldo*, 709 S.E.2d 278, 281 (Ga. Ct. App. 2011).

To defeat Defendants' assertion of official immunity, then, Plaintiffs needed to allege actual malice. Plaintiffs failed to do that. As outlined above, Plaintiffs didn't respond to Defendants state-law arguments in any way. Even Plaintiffs' Complaint doesn't allege actual malice. *See generally* [Doc. 1-1]. Because the "record is devoid of any evidence that [Defendants] acted with actual malice," Plaintiffs fail to overcome

Defendants' official immunity. *Merrow v. Hawkins*, 467 S.E.2d 336 (Ga. 1996).

      **b.**    <u>**Sovereign Immunity**</u>

To the extent that Plaintiffs seek damages from the Butts County Sheriff's Office for their state-law claims, sovereign immunity bars those claims. *See Cameron*, 549 S.E.2d at 346. Only the Georgia General Assembly retains the power to waive a county's immunity. *Id.* Indeed, Plaintiffs bear the burden to show that sovereign immunity was waived or otherwise shouldn't apply. *Sadler v. Dep't of Transp.*, 716 S.E.2d 639 (Ga. Ct. App. 2011). Unsurprisingly, Plaintiffs didn't respond to Defendants' assertion of sovereign immunity, either. The Court finds no waiver of Defendants' sovereign immunity.

Therefore, based on official and sovereign immunity, the Court **GRANTS** Defendants' Motion as it relates to each of Plaintiffs' state-law claims.

<u>**CONCLUSION**</u>

Based upon the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 15]. The Clerk of Court is **DIRECTED** to enter Judgment in favor of Defendants and **CLOSE** this case.

**SO ORDERED**, this 14th day of December, 2022.

                              S/ Tilman E. Self, III
                              **TILMAN E. SELF, III, JUDGE**
                              **UNITED STATES DISTRICT COURT**